IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In Re:
EDWARD WATSON,                             Case No. 15-2408-JCO
                                                Chapter 7

    Debtor.

_____


SHARON DOTSON, *et al.*,

    Plaintiffs,

v.

                                          Adversary Case No. 16-23-JCO

EDWARD WATSON,

    Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>

      This Adversary Proceeding came before the Court on October 12, 2017, for a trial on the merits of the Amended Complaint filed by Plaintiffs Sharon Dotson, Aleka Bell, and Elaine Edwards against Debtor Edward Watson. (Doc. 35). Appearing on behalf of Plaintiffs was attorney Larry Moorer, and on behalf of Defendant Debtor was attorney John Grow.

      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the order of reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(I), (J), and the Court has authority to enter a final order.

      The Amended Complaint contests the dischargeability of the debts owed by

Debtor to Plaintiffs under 11 U.S.C. §§ 727 and 523[1] on the grounds that Debtor perpetrated fraud against the plaintiffs in obtaining loans from them, and also that Debtor failed to disclose the existence of a pre-petition asset, a grocery in the Philippines, in his schedules.

The case was called and the Court heard testimony from Plaintiffs Sharon Dotson and Aleka Bell, as well as from the Debtor. The Court found the witnesses presented to be forthright, honest and credible. Both parties submitted exhibits into evidence without objection. The Court has considered the record, the evidence and testimony presented, the law, as well as the arguments of the parties and concludes that the debts owed by Debtor to Plaintiffs are dischargeable for the reasons set out below.

<u>FACTS AND PROCEEDINGS</u>

Debtor filed his Chapter 7 petition for relief on July 30, 2015. In the years leading up to his filing, Debtor went through a season of difficulties in his life, and, as a result, he sought financial help from members of his family. In 2009, Debtor was in the process of getting a divorce and obtaining custody of his children. He was struggling to pay for the mounting attorney fees and costs, so he asked his niece, Aleka Bell, for a loan. Ms. Bell agreed to loan Debtor the money he needed to fund his divorce and custody defense, which totaled approximately $49,500.00. Both Debtor and Ms. Bell stated unequivocally that the reason for this loan was to cover the divorce and custody proceedings.

---

[1] Plaintiff's Amended Complaint does not reference any subsection under either statute which provides the basis for their requested relief. Without any direction from Plaintiffs on what subsections of each statute provide them with relief, this Court must extrapolate from the argument by counsel and facts presented at trial and will apply the necessary legal framework in adjudicating the Amended Complaint.

The money that Ms. Bell loaned to Debtor was sourced from military death benefits she received from the passing of her husband. The money was in an account for the benefit of Ms. Bell's own children, and was paid out in three increments: $20,000.00, $20,000.00 and $4,500.00.[2] Ms. Bell testified that Debtor agreed to begin repaying the loan in 2010. However, Debtor didn't begin repayment until 2011, and has only repaid approximately $6,600.00 to Ms. Bell on the entire sum loaned. Sometime in 2013, Debtor stopped making payments on the loan. Ms. Bell inquired with Debtor about the outstanding balance, and he responded with an offer for her to go into business with him on a grocery store his new wife owned in the Philippines. She declined his offer and received no more payments from Debtor on the loan.

After she stopped receiving payments from Debtor, Ms. Bell obtained a judgment and began garnishing the Debtor through the Circuit Court of Mobile County, Alabama. At that time, he was working an hourly job at a local nursing home. The monies that were collected through the garnishment were held by the Clerk of Court and were turned over to the office of Debtor's counsel when he filed bankruptcy.

Plaintiff Sharon Dotson testified that she is Debtor's sister and at some time in mid-2014, Debtor asked her to loan him $5,000.00 to stock the grocery store in the Philippines that his new wife owned there. Ms. Dotson agreed to loan Debtor $4,000.00 which would she would source from her income tax return when she received it. In return, Debtor promised to repay the loan by selling antique furniture that he owned, and to repay the loan from the sales proceeds of the grocery store. There is no dispute that the reason Debtor asked for this loan was to stock the grocery store.

---

[2] It is undisputed that the $4,500.00 loaned by Bell to Debtor was to cover the expense of braces for Debtor's daughter.

On May 13, 2014, Ms. Dotson wired Debtor $4,000.00. (*See* Creditor's Exhibit 2). Debtor never repaid Ms. Doston any of the money she loaned him.

Plaintiff Elaine Edwards was not present at trial, and thus provided no testimony as to the allegations in the Amended Complaint. Ms. Edwards is also Debtor's sister. Debtor testified that the reason he sought a loan from Ms. Edwards was also to fund the stocking of the grocery store in the Philippines. Debtor testified that the reason Ms. Edwards was not present at trial was because she and he are on good terms regarding the discharge of her debt. With no evidence to the contrary, the Court accepts Debtor's testimony regarding this debt as true and correct.

Debtor testified that the store was open for business for approximately three months, from July through October of 2014. He testified that the store was not his, but his wife's, who at that time lived in the Philippines. She was the only titleholder to the store because the law of the Philippines does not allow non-citizens to own real property in the Philippines. *See* Philippine Const., Art. XII. He testified that even though he thought it a bad investment, he agreed to help his wife fund it for the sake of marital accord. And so he did by asking for the loans from Ms. Dotson and Ms. Edwards. The building for the store was purchased in Debtor's wife's name, and all the licenses for operation were also in her name. Debtor testified the store was in a poor location and that monthly utilities and maintenance would likely be too much for the store to make a profit.

Once the store was stocked and open for business, Debtor testified that sales were extremely slow on a regular basis making it difficult to pay the monthly bills and utilities, let alone turn a profit. Debtor's wife was working long hours running the store herself, while also keeping their very young child. Eventually, Debtor and his wife decided that

4

closing the store was the most economical decision for their family. The building was put up for a quick sale and its sale turned a $13,000.00 profit. The dry goods were sold to another vendor and the perishable items were donated to a home for the elderly and poor. The Debtor's wife used the $13,000.00 building sale proceeds for living expenses until they returned to the United States to live with Debtor.

Debtor testified that he understood his schedules were filled out and signed by him under the penalty of perjury and that he was required to fill them out truthfully. Included in Debtor's schedules was his Statement of Financial Affairs in which he checked "NONE" regarding all other property . . . transferred either absolutely or as security within two years immediately preceding the commencement of this case." (Doc. 1 at 39, ¶ 10). Debtor testified that because the grocery store was solely in his wife's name, and that because it was closed approximately nine months prior to his filing for relief, that he believed disclosure of the grocery was unnecessary.

<u>CONCLUSIONS OF LAW</u>

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt for money, property, services, or an extension, renewal, or refinancing of credit will not be discharged to the extent *<u>obtained</u>* by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C § 523(a)(2)(A).

In order for a particular debt to be excepted from discharge, a plaintiff must prove by a preponderance of the evidence that the defendant's conduct fits within definition of false pretenses, a false representation, or actual fraud. *See Grogan v. Garner,* 498 U.S. 279, 291 (1991). Exceptions to discharge must be strictly construed in order to give

effect to the "fresh start" policy of the Bankruptcy Code. *In re Meyer,* 296 B.R. 849, 857 (N.D. Ala. Feb. 25, 2003)(*citing Hope v. Walker,* 48 F3d 1161 (11th Cir. 1995); *Equitable Bank v. Miller,* 39 F.3d 301, 304 (11th Cir. 1994)); *see also In re Wood,* 245 Fed. Appx. 916 (Aug. 21, 2007).

Some Courts have found that the three types of fraud listed in Section 523(a)(2) are inextricably intertwined, such that it is nearly impossible to conceive of a set of circumstances that would constitute actual fraud, but which would not also constitute false pretenses or false representation, making the analysis of fraud one that overlaps with each of the three types listed. *In re Gilmore,* 221 B.R. 864, 872 (N.D. Ala. June 17, 1998). Thus, a finding of actual fraud would necessitate and subsume a finding of false pretenses and false representations. Other courts have applied the three types of fraud separately because Section 523(a)(2)(A) is written in the disjunctive. *See Matter of Johnson,* 2017 WL 1839159, at *8 (Bankr. N.D. Ala. May 5, 2017)(*citing In re Zeller,* 242 B.R. 84, 87 (Bankr. S.D. Fla. 1999). This Court agrees with the Court in *Gilmore,* that despite the statute being written in the disjunctive, the analysis of each type of fraud does indeed overlap. Nevertheless, Plaintiff's Complaint does not expressly state which of the three types of fraud occurred, and since the three types of fraud *are* written in the disjunctive in the statute, this Court will analyze each type of fraud separately.

<u>False Pretenses</u>

"False pretenses are implied, and includes any intentional fraud or deceit practiced by whatever method in whatever manner." *Matter of Johnson*, 2017 WL 1839159, at *8 (Bankr. N.D. Ala. May 5, 2017). "False pretenses may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak,

and may consist of any acts, work, symbol or token calculated and intended to deceive."
*Id.* "It is a series of events, activities or communications which, when considered collectively, create a false sense and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." *Id.* Silence or concealment as to a material fact can constitute false pretenses." *Id.*

In the case at hand, this Court finds that Plaintiffs fail to meet their burden of proof in establishing that Debtor asserted any false pretense in obtaining the loans he received from Plaintiffs. Regarding the monies loaned by Ms. Bell, based on Ms. Bell's testimony and Debtor's testimony, the record is clear that the stated purpose of the monies loaned to Debtor were for the purpose of funding his divorce and custody proceedings. Ms. Bell loaned the money for that reason, and Debtor testified that he used the money for that purpose. No evidence was presented to the contrary, thus, this Court concludes that Debtor did not wrongfully induce Ms. Bell into lending him the monies he requested, and thus did not obtain the loan under false pretenses.

As for the loan provided by Ms. Dotson, the same analysis applies. Debtor affirmatively testified, as did Ms. Dotson, that Debtor needed money to fund the startup of a grocery store in the Philippines. Ms. Dotson loaned him money for that purpose, and Debtor testified that he used it for that purpose. No other evidence or testimony was presented which calls into question why Debtor requested the loan from Ms. Dotson or how he used the money loaned. Therefore, this Court finds that Debtor did not wrongfully induce Ms. Dotson into lending him money to fund the grocery store startup, and thus he did not obtain the loan under false pretenses.

As for the monies loaned by Ms. Edwards, Debtor testified that the reason he asked for the loan was also to fund the startup of the grocery store in the Philippines. Debtor testified that she loaned him the money for that purpose, and, that he used it for that purpose. Ms. Edwards was not present at trial to dispute Debtor's testimony. No other evidence was presented to dispute the stated reason for the loan or Debtor's use of the money. This Court finds Debtor testified honestly, and therefore concludes that he did not wrongfully induce Ms. Edwards into lending him money, and thus did not obtain such under false pretenses.

<u>False Representation</u>

A false representation typically requires an express misrepresentation by a debtor to an issuer of credit. *Johnson,* 2017 WL 1839159, at *8. Reckless disregard for the truth can constitute a false representation. *In re Meyer,* 269 B.R. 849 (N.D. Ala. 2003). "The term 'reckless' has been interpreted to be the equivalent of *intentional.*" *In re Booth,* 174 B.R. 619, 623 (Dec. 1, 1994)(emphasis in original).

The Court finds that Debtor did not make an express misrepresentation or intentionally or recklessly disregard the truth behind the stated reasons for each loan he received from Plaintiffs. Ms. Bell, Ms. Dotson and Debtor all testified that the reasons Debtor sought the loans from them was to pay for divorce and custody proceedings and to fund the startup of a grocery store in the Philippines, respectively. Debtor's conduct in obtaining the loans was not expressly false, and thus does not constitute an express misrepresentation. Therefore, this Court finds that Debtor did not expressly misrepresent any facts in obtaining the loans from Plaintiffs, nor did he recklessly disregard the truth in

requesting the loans from Ms. Bell and Ms. Dotson.  With no evidence to the contrary, the same analysis applies for Ms. Edwards.

The Court notes that Plaintiffs appeared to be particularly offended and aggrieved that the Debtor broke his promise to repay the loans.  However, the failure to perform a promise to repay is not sufficient to make a debt nondischargeable, even if there is no excuse for the failure to do so.  4-523 Collier on Bankruptcy P 523.08 (16th 2017).  A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions. *Id.; see also In re Scarlata,* 979 F.2d 521 (7th Cir. 1992).  Debtor promised repayment to each Plaintiff, and he did partially repay Ms. Bell for a period of approximately six years.  However, the fact that his life circumstances changed and he became unable to repay any of the loans does not render his conduct when obtaining them an express misrepresentation.

<u>Actual Fraud</u>

Actual fraud is determined on a case-by-case basis.  *In re Meyer,* 296 B.R. 849, 858 (Bankr. N.D. Ala. 2003).  The elements to prove actual fraud under § 523(a)(2)(A) are based on the traditional elements of common law fraud.  *In re Meyer,* 296 B.R. at 858.  "Thus, to prevail under that section, a creditor must prove that

> (1) the debtor made representations;
> (2) at the time, the debtor knew the representations were false;
> (3) the debtor made the false representations with the purpose and intention of deceiving the creditor;
> (4) the creditor justifiably relied on such representations; and
> (5) the creditor sustained a loss as a result of the representations.

*Id.* (*citing AT & T Universal Card Servs. Corp. v. Reach,* 225 B.R. 236, 239 (Bankr. N.D. Ala.1997)); *see also Field v. Mans,* 516 U.S. 59, (1995); *Am. Express Travel Related*

*Servs. Co. v. McKinnon,* 192 B.R. 768, 771 (Bankr. N.D. Ala.1996). Each factor will be analyzed as it relates to these facts. However, it is important to note that the facts this Court must analyze are those facts surrounding the Debtor's efforts to *obtain* the loans. The facts surrounding the Debtor's efforts to repay the loans are only relevant if they help prove the Debtor's intentions when he obtained the loans.

### Factor One: Debtor's Representations

The testimony presented is sufficient for this Court to conclude that Debtor made representations to each Plaintiff in requesting each loan. As to Ms. Bell, he needed a loan to cover divorce and custody proceedings. She testified to this as well. For Ms. Dotson, she and Debtor both testified that he requested a loan from her to fund the startup of a grocery store in the Philippines. Debtor testified that the reason asked Ms. Edwards for a loan was also to fund the grocery store startup. No evidence to the contrary regarding any Plaintiff was presented.

Therefore, the Plaintiffs have met their burden in establishing that Debtor made representations to them regarding the basis for each loan. The Court must now determine whether those representations were false.

### Factor Two: Debtor's Representations Were Not False

The evidence and testimony presented by all parties indicates that Debtor was truthful in stating his reasons for needing the loans from Plaintiffs. Presumably, the Plaintiffs believed that the Debtor had no intention of repaying the loans when they were obtained. Regardless, there was no evidence presented that he made any effort to deceive any party when obtaining the loans.

10

Debtor testified, in regards to Ms. Bell, that he needed a loan to cover divorce and custody proceedings, and Ms. Bell testified that she loaned him money for divorce and custody proceedings.

Debtor testified that he asked for a loan from Ms. Dotson so he could fund a grocery store startup in the Philippines, and Ms. Dotson testified that she loaned him money so he could fund the startup of the grocery store in the Philippines.

With no evidence otherwise, the Court finds that Debtor was truthful in the representations he made to Ms. Edwards when requesting the loan from her.

Therefore, the evidence and testimony presented is undisputed that Debtor was truthful in requesting each loan from Plaintiffs. He made no false representations to them in obtaining the funds they loaned to him. The reasons he stated were the reasons they loaned. Thus, he made no false representations to Plaintiffs, and Plaintiffs have failed to meet their burden on this factor.

Because all five factors set out above must be met in order to prove actual fraud, the failure to meet the burden of proof of one factor is sufficient to prohibit a finding of nondischargeability. Therefore, this Court will not engage in unnecessary analysis of the other factors. Having concluded that the individual debts of Ms. Bell, Ms. Dotson and Ms. Edwards are not excepted from the discharge under 523(a), the Court will now turn to whether Debtor is entitled to a discharge at all under 11 U.S.C. § 727.

<u>§ 727(a)(2): Debtor Did Not Conceal Property<br>with Intent to Hinder, Delay, or Defraud</u>

Section 727(a)(2) states:

> **(a)** The court shall grant the debtor a discharge, unless--
> **(1)** the debtor is not an individual;
> **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this

11

title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

**(A)** property of the debtor, within one year before the date of the filing of the petition; or

**(B)** property of the estate, after the date of the filing of the petition;

Plaintiffs' Complaint raises § 727 issues, focusing primarily on Debtor's alleged concealment of the grocery store in his schedules, and Statement of Financial Affairs ("SOFA"). "For discharge to be denied under section 727(a)(2), a plaintiff must prove: (1) a concealment of property occurred; (2) the concealment was of debtor's property [or property of the estate under section 727(a)(2)(B)]; (3) the concealment was made within one year prior to the petition date [or made after the bankruptcy filing date under section 727(a)(2)(B)], and (4) the concealment was done with the intent to hinder, delay, or defraud a creditor or the trustee." *In re Savage*, 2016 WL 856016, at *9 (Bankr. N.D. Ala. Mar. 4, 2016) (*citing In re Dereve,* 381 B.R. 309, 325 (Bankr. N.D. Fla. 2007)). "[C]oncealment ... includes the withholding of knowledge of an asset by the failure or refusal to divulge information required by law to be made known." *In re Savage* at *9 (*citing Buckeye Ret. Co. v. Swegan (In re Swegan),* 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008)). The property concealed must be property belonging to the debtor or the estate; if the property belongs to another person or entity it is not "property of the debtor" or "property of the estate" for purposes of section 727(a)(2). *In re Savage* at *9 (*citing Wachovia Bank, N.A. v. Spitko (In re Spitko),* 357 B.R. 272, 299 (Bankr. E.D. Pa. 2006)). The requisite intent may be inferred based on circumstantial evidence or on the facts and circumstances of the particular case. *Savage* at *9 (*citing James v. Tipler (In re Tipler),* 360 B.R. 333, 340 (Bankr. N.D. Fla. 2005)). Numerous omissions from the schedules and statement of financial affairs may signify a reckless disregard for the truth, which in

turn is "generally recognized as the equivalent of fraud." *Savage*, at *9 (*citing Behrman Chiropractic Clinics,* 189 B.R. at 994 (Bankr. N.D. Ala. 1995)).

Applying the first element to the facts at hand, this Court finds that a concealment may have occurred. Debtor testified that he knew about the grocery store, its pre-petition liquidation, and the proceeds generated from its liquidation, yet he did not disclose it in his schedules or in his SOFA. Therefore, Plaintiffs have met their burden of proof on the first factor.

Concerning the second factor of concealment of property of the debtor or the estate, this Court finds that Plaintiffs have failed to meet their burden of proof. A cursory review of the law of the Philippines reveals that land ownership in the Philippines is reserved for Philippine citizens and corporations that are considered Philippine nationals. *See* Philippine Const., Art. XII. Debtor testified to this prohibition, and stated that it was the reason he believed he did not own the grocery store, and the reason that he believed he did not need to disclose his involvement in the grocery store on his schedules or SOFA. With no evidence contradicting Debtor's ownership of the grocery store, this Court finds that the property allegedly concealed by the Debtor did not belong to him, and thus, Plaintiffs have failed to meet their burden of proof on this factor.

Regarding factor three, it is undisputed that the property was allegedly concealed within one year of the petition. Debtor filed for Chapter 7 relief on July 30, 2015. Debtor testified that the store was operational for three months, and began liquidation in October of 2014. Therefore, this Court finds in favor of Plaintiffs that the concealment occurred within one year of the petition date.

Turning to the fourth and final factor, whether the concealment was done with the intent to hinder, delay, or defraud a creditor or the trustee, this Court finds for the Debtor. He testified multiple times that because he believed he did not have any ownership in the grocery store due to the constitutional law of the Philippines prohibiting it, and because there were no assets to even disclose because they had been liquidated, he honestly believed that he was not obligated to disclose the existence of the grocery store in his schedules or SOFA. Debtor affirmatively stated that his failure to disclose the store was not to defraud the trustee or his creditors, rather, he truly believed there was nothing to disclose due to his lack of ownership in the store. The Court found Debtor's testimony to be honest and truthful, and therefore finds that the nondisclosure of the grocery store was not based on Debtor's intent to hinder, delay, or defraud his creditors or trustee. Therefore, this Court finds that Debtor's discharge is not due to be revoked under Section 727(a)(2) for concealment of property belonging to him or the estate with the intent to hinder, delay or defraud his creditors or the trustee within one year of the petition.

Section 727(a)(4): Debtor Did Not Make
A False Oath or Account

Section 727(a)(4) states that a discharge shall be granted unless the debtor "knowingly or fraudulently, in or in connection with the case—(A) made a false oath or account. . . ."

Although the Plaintiffs do not specifically state that they seek denial of discharge under subsection (A) of section 727(a)(4), it is apparent from the allegations in the Complaint and the arguments made at trial that section 727(a)(4)(A) is the basis of their objection. "To be successful, Plaintiffs must prove (1) the debtor made a statement under oath; (2) that statement was false; (3) the debtor knew the statement was false; (4) the

Case 15-02408   Doc 40   Filed 11/03/17   Entered 11/03/17 15:11:02   Desc Main
Document      Page 14 of 19

debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Savage*, 2016 WL 856016, at \*11–12 (Bankr. N.D. Ala. Mar. 4, 2016).

"For the purposes of § 727(a)(4)(A), a debtor's schedules constitute an oath." *In re Savage*, at \*11(*citing In re Grondin,* 232 B.R. 274, 276 (1st Cir.B.A.P.1999) ("A debtor's Schedules . . . are unsworn declarations made under penalty of perjury and are, according to federal law, the equivalent of a verification under oath")). "Deliberate omissions from schedules or the statement of financial affairs may also constitute false oaths or accounts." *Id.; see also Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir. 1991).

"Fraudulent intent "refers to the misrepresenter's knowledge of the untrue character of his or her representations." *Savage,* at \*11*In re Digital Resource, LLC,* 246 B.R. 357, 367 (8th Cir.B.A.P.2000). "Fraudulent intent is, in essence, dishonesty or bad faith." *Id.* "Fraudulent intent has also been characterized as intent to 'deceive' or 'mislead.' " *Id.* A false oath is sufficient to bar discharge when it is material, that is, bearing a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. *Id.* at \*11 (*citing Chalik v. Moorefield,* 748 F.2d 616, 619 (11th Cir. 1984).

The veracity of a debtor's bankruptcy petition, including the schedules and statement of financial affairs, is essential to the successful administration of the debtor's case. *In re Savage,* at \*12 (*citing Crews v. Stevens (In re Stevens),* 250 B.R. 750, 754 (Bankr. M.D. Fla. 2000)). "Therefore, submissions must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *Id.* While an isolated omission may be attributed to oversight, a pattern of

omissions clearly warrants the conclusion that the omissions from the SOFA and the schedules were made with the requisite fraudulent intent. *Id.*

When Debtor filed for Chapter 7 relief, he did not disclose any information regarding the grocery store in his Schedules or in his SOFA. In paragraph 10 of his SOFA, Debtor checked the box "NONE" indicating that there was no other property transferred within two years immediately preceding the commencement of his case. At trial, Plaintiffs argued that Debtor should have disclosed the grocery store in his Schedules and in paragraph 10 of his SOFA, and that failure to do so equates to Debtor making a false oath. Applying the law set out above to the facts of this case, the Court finds in favor of Debtor.

The first element, that the debtor made a statement under oath, has been easily satisfied since the Debtor filed the Schedules and SOFA. The second element, that the statement made under oath was false, has not been satisfied. While it may have been prudent to disclose the grocery store and its liquidation in his Schedules and SOFA, Debtor's failure to do so does not bar him from obtaining his discharge. Debtor testified that he reasonably believed that the grocery store did not belong to him, and thus he had nothing to disclose regarding its transfer. Furthermore, this Court has already found that according to the Philippine Constitution, that Debtor was prohibited from owning property in the Philippines, thus, he had no grocery-store related transfers to disclose. Therefore, the statement made in paragraph 10 of his SOFA was not false.

The third element, that Debtor knew the statement was false, overlaps with the second. Debtor testified repeatedly that he honestly believed that he did not have any interest in the grocery store to disclose in his Schedules or SOFA. He testified that he

filled the schedules out to the best of his ability. Debtor did not know or believe that his checking the "NONE" box in paragraph 10 of his SOFA could be construed as false. Debtor does not boast ample financial or legal sophistication. His reasonable belief that he was filling out his SOFA honestly is insufficient for this Court to find that the statements were false, or that he knew they were false.

Lastly, that the statement was made with fraudulent intent, this Court finds for the Debtor. Debtor's testimony established that he honestly disclosed his income and assets in his Schedules and SOFA, and therefore did not make a false oath with fraudulent intent. An honest intention to fill out his Schedules and SOFA to the best of his knowledge and ability leaves no room for a finding that Debtor intended to commit a fraud against any party in interest in his bankruptcy case. With no evidence to the contrary, this Court finds that Plaintiffs have failed to meet their burden of proof regarding the making of a false oath. Therefore, Debtor is entitled to his discharge on these grounds.

<u>Section 727(d): Revocation of Discharge</u>

Section 727(d) states,

> **(d)** On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
> **(1)** such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
> **(2)** the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

Revocation of a discharge is an extraordinary remedy. *In re Scott,* 481 B.R. 119, 213 (N.D. Ala. Sept. 27, 2012). Statutory exceptions to discharge are construed liberally

in favor of the Debtor, and the reasons for denying a discharge must be real and substantial, not merely technical or conjectural. *Id.* In considering whether to grant revocation of a discharge, a bankruptcy court should consider these factors:

> [1] the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied ... [;][2] the intent behind the bankrupt's acts—were they wilful [sic] or was there a justifiable excuse; [3] was there injury to the creditors; and [4] is there some way the bankrupt could make amends for his conduct.

This is a heavy burden of proof on which Plaintiffs presented little evidence. This burden of proof is a more exacting standard of proof than that required by the other statutes analyzed herein. Given that Plaintiffs have failed to carry their burden on all other lesser requests for relief, the Court cannot find that Plaintiffs have done so here.

<u>CONCLUSION</u>

A discharge does not eliminate the moral obligation that is born when a loan is obtained by a borrower. While a creditor may no longer contact a debtor to collect a discharged debt, nothing prohibits a debtor from voluntarily repaying a creditor after a bankruptcy discharge has been entered. This Court reminds the Debtor that voluntary repayments after bankruptcy can and often do occur when a debtor has a creditor that is important to him, such as a family member. *See e.g., In re Barnes,* 969 F.2d 526, 530 (7th Cir. 1992).

Nevertheless, having considered the record, the evidence and testimony presented at trial, the arguments of the parties, and the applicable law, this Court finds that Plaintiffs have failed to meet their burden on each request for relief set out in the Amended Complaint.

Therefore, judgment is due to be and hereby is entered in favor of Debtor on the merits as to all counts set out in the Amended Complaint. This is a final order. The Clerk is hereby DIRECTED to close this case as soon as practicable.

Dated: November 3, 2017

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE